UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JASON E. MIZE,

    Plaintiff,

v.                                            3:03-cv-601

VIRGINIA LEWIS, et al.,

    Defendants.

## MEMORANDUM OPINION

This is a *pro se* prisoner's civil rights action pursuant to 42 U.S.C. § 1983 filed by plaintiff Jason E. Mize ("Mize"). The matter is before the court on the defendants' motion for summary judgment. For the following reasons, the motion for summary judgment [Court File No. 74] will be **GRANTED** and this action **DISMISSED**.

I.    Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law." "In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). *See also Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *Securities and Exchange Commission v. Blavin*, 760 F.2d 706, 710 (6th Cir. 1985). The burden is on the moving party to conclusively show that no genuine issue of material fact exists. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

> Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. The dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the non-moving party. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.

*60 Ivy Street Corp. v. Alexander*, 822 F.2d at 1435-36 (citations omitted).

Once the moving party presents evidence sufficient to support a motion for summary judgment, the non-moving party is not entitled to a trial merely on the basis of allegations. The non-moving party must present some significant probative evidence to support its position. *White v. Turfway Park Racing Association, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990); *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). Mere allegations of a cause of action will no longer suffice to get a plaintiff's case to the jury. *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989).

Summary judgment should not be disfavored and may be an appropriate avenue for the "just, speedy and inexpensive determination" of an action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The moving party is entitled to judgment as a matter of law "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

II.  Factual Background

Plaintiff Mize is in the custody of the Tennessee Department of Correction (TDOC). He filed this action during his confinement in the Southeastern Tennessee State Regional Correctional Facility (STSRCF); Mize is currently housed at the Northeast Correctional Complex. Mize alleges the violation of his First Amendment right to freedom of religion, specifically his right to practice the Christian Identity Faith, and seeks monetary damages. The defendants are Howard Cook, former assistant commissioner of operations for TDOC (now retired); Virginia Lewis, the warden of the STSRCF; and Michael Allison and Eric Qualls, Security Threat Group (STG) Coordinators.

In support of their motion for summary judgment, the defendants have submitted the affidavits of Virginia Lewis, Michael Allison, and Howard Cook. [Court File Nos. 86-88, respectively]. Plaintiff has not filed a countervailing affidavit or otherwise responded to the

motion for summary judgment. Rule 56(e) of the Federal Rules of Civil Procedure provides, in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Nevertheless, the United States Court of Appeals for the Sixth Circuit has found that a plaintiff's verified complaint, to the extent that the allegations therein are based on personal knowledge, satisfies the requirements of Rule 56(e) as an opposing affidavit. *Hooks v. Hooks*, 771 F.2d 935, 945-46 (6th Cir. 1985). *See also Williams v. Browman*, 981 F.2d 901, 904-05 (6th Cir. 1992); 28 U.S.C. §1746. Plaintiff signed his complaint declaring under penalty of perjury that the complaint was true and correct. Accordingly, this court will consider the verified complaint, as amended, to the extent it contains allegations based on personal knowledge, as plaintiff's affidavit under Rule 56(e).

The affidavits and documents filed by the parties disclose the following facts: Mize is a member of the Christian Identity Faith and a self-admitted racist, who believes in white supremacy, racial purity, and the separation of the races. On April 24, 2003, Mize was sent to STSRCF to participate in the Security Threat Group Program. The goal of the program is for an inmate to disassociate from the security threat group, and thus an inmate in the program is not allowed to correspond with security threat groups.

On June 10, 2003, and June 17, 2003, Warden Lewis personally reviewed literature mailed to Mize, specifically the "Hoskins Report" and "The Spirit," respectively. She determined that the literature contained material that promoted racism, anti-Semitism, and white separatist views, and thus contained information relating to security threat group activity. Warden Lewis therefore did not allow the mail to be delivered to Mize. Mize appealed that decision, and the decision was affirmed by then Assistant Commissioner Cook.

On September 17, 2003, Warden Lewis personally reviewed mail sent to Mize from the Church of Jesus Christ Christian. She again determined the literature contained material that promoted racism, anti-Semitism, and white separatist views associated with security threat group activity; Warden Lewis did not allow Mize to receive the mail. On the same date, Warden Lewis personally reviewed a book titled "Israel, Our Duty, Our Dilemma." She did not allow the book to be delivered to Mize because she found the book's contents could be considered an attempt to incite violence in the prison based upon race, religion, sex, creed, or nationality. Again, Assistant Commissioner Cook agreed with her decisions on appeal.

Mize attempted to send letters, dated November 15 and November 20, 2003, to Jesus Christ Christian of the Aryan Nation. Because Mize was a participant in the Security Threat Group Program, STG Coordinator Michael Allison did not allow the letters to be mailed.

On November 21, 2003, Warden Lewis personally reviewed more literature from the Church of Jesus Christ Christian sent to Mize. She did not allow Mize to receive the literature because she determined it promoted racism, anti-Semitism, and militant white separatist views. Assistant Commissioner Cook concurred.

During this time-frame, Mize wrote Assistant Commissioner Cook, asking that the TDOC recognize the Christian Identity Faith as a religion. According to Mize, until the Christian Identity Faith is recognized by the TDOC as a religion, he cannot have his religious books, practice his holy days, or receive special meals. Assistant Commissioner Cook denied Mize's request, having determined the Christian Identity Faith to be a supremacist ideology which was affiliated with various supremacist security threat groups.

III.     Discussion

Prisoners have a First Amendment right to practice their religious beliefs. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). This right is not unlimited, however. All that is required under the First Amendment is that prisoners be provided "reasonable opportunities" to practice their religion. *Id*. In addition, prison regulations may restrict an inmate's First Amendment rights.

> "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law."

*Pell v. Procunier*, 417 U.S. 817, 822 (1974).

When a prison regulation infringes upon an inmate's religious practices, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). As the Supreme Court has noted,

> [M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees. "[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry. Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security.

*Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979) (footnote omitted) (citations omitted) (quoting *Pell v. Procunier*, 417 U.S. 817, 823 (1974)). Thus, "[p]rison administrators should be accorded wide-ranging deference in the adoption and execution of policy and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 547. *See also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.").

Attached as an exhibit to Warden Lewis' affidavit is a copy of the relevant TDOC policy with respect to inmate mail, which provides as follows:

C. Incoming mail shall be handled as follows:

...

7

3. Incoming mail may be determined to be a threat to the security of the institution and returned to the sender if, in the opinion of the warden, it could reasonably be considered to :

   a. Be an attempt to incite violence based on race, religion, sex, creed, or nationality.

   b. Advocate, facilitate, or otherwise present a risk of lawlessness, violence, anarchy, or rebellion against government authority.

   c. Be an attempt to incite disobedience toward law enforcement officials or prison staff.

   d. Be an attempt to give instructions for the manufacturing of use of intoxicants, weapons, explosives, drugs, drug paraphernalia, or other unlawful items or substances.

   e. Contain obscene photographs, pictures, or drawings, including publications and advertisements from distributors.

   f. Contain plans to escape, unauthorized entry into the institution, or information or maps which might aid an escape attempt.

   g. Contain information relating to security threat group activity or use of codes and/or symbols associated with security threat groups.

   h. Contain materials specifically found to be detrimental to prisoner rehabilitation because it could encourage deviate criminal sexual behaviors.

TDOC Policy # 507.02, Inmate Mail, Section VI. *Procedures* (effective February 1, 2002).

The TDOC defines a security threat group as follows:

Any formal or informal group, organization, or association of individuals who possess common characteristics which serve to distinguish them from other

groups or individuals and who have been determined to be acting in concert so as to pose a threat or potential threat to staff, other inmates, the institution, or the community.

TDOC Policy # 506.26, Security Threat Group Program Identification, Placement and Operation, Section IV. *Definitions*, D. *Security Threat Group (STG)* (effective November 15, 2002) (attached exhibit to affidavit of Michael Allison).

Attached as an exhibit to Assistant Commissioner Cook's affidavit is a copy of the relevant TDOC policy with respect to religious programs, which provides, in pertinent part:

A. *Security Threat Groups (STG)*:

Inmate possession of STG-like materials or symbols will be prohibited. First Amendment free exercise protection applies to religious ideas and symbols by faith groups whose only purpose is religious, but it does not extend to STG's use of religious ideas and symbols.

TDOC Policy # 118.01, Religious Programs, Section VI. *Procedures* (effective May 15, 2000).

The Sixth Circuit has held that TDOC Policy # 507.02 is valid on its face, with respect to banning mail that advocates anarchy. *Thompson v. Campbell*, 81 Fed.Appx. 563, 567 (November 20, 2003) ("we agree with the district court that the policy on its face satisfies the Constitution"). Clearly, a prison policy prohibiting inmate mail that involves security threat group activity is likewise constitutional.

In considering the reasonableness of a restrictive prison regulation in the context of a motion for summary judgment, the court "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences

9

must accord deference to the views of prison authorities." *Beard v. Banks*, 126 S. Ct. 2572, 2578 (2006). Thus, "[u]nless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Id*. (citation omitted). Therefore, with respect to the prison officials' findings that the Christian Identity Faith materials involved security threat group activity, the court will defer to the professional judgment of the prison officials.

As noted earlier, Warden Lewis testifies by affidavit that she personally reviewed the literature that Mize was not allowed to receive and found it to contain white supremacist ideology. Likewise, Assistant Warden Cook testifies that he determined the Christian Identity Faith was a supremacist ideology associated with a security threat group. Mize admits that the literature about the Christian Identity Faith advocates racial purity, but he claims that it does not condone violence or illegal activity, and thus should not be banned just because others may disagree with its message.

Mize, of course, is free to believe what he wants to believe, but it was within Warden Lewis' discretion, pursuant to TDOC policy, to refuse plaintiff possession of literature she found to involve security threat group activity. Such refusal was reasonably related to the essential goal of maintaining prison security. *See, e.g., Goss v. Myers*, No. 99-5544, 2000 WL 125905 *1 (6th Cir. January 28, 2000) (unpublished decision) (prisoner's civil rights action for the rejection of mail concerning "Hebrew Isrealite [*sic*] Identity Christian/White Separatist" religious beliefs was properly dismissed in light of need to preserve prison security); *Bruton v. McGinnis*, No. 96-1409, 1997 WL 139797 *1 (6th Cir. March 26, 1997)

(unpublished decision) (prisoner's civil rights action for rejection of materials associated with the "Christian Identity" faith was properly dismissed based upon legitimate penological interests). Likewise, it was within defendant Allison's discretion to refuse to mail Mize's letters to an Aryan Nation organization, as well as within Assistant Commission Cook's discretion to refuse to recognize the Christian Identity Faith as a religion.

In addition, the court notes that Mize has sued the defendants only for money damages. A state official may be held personally liable under § 1983 in his individual capacity for actions taken in his official capacity. *Hafer v. Melo*, 502 U.S. 21 (1991). However, if a defendant is sued only in his official capacity and only for money damages, then that defendant is entitled to absolute immunity under § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989); *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991). "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

In *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989), the Sixth Circuit held that an inmate seeking damages under 42 U.S.C. § 1983 must clearly set forth in his pleadings that he is suing a state official in an individual capacity and not merely in an official capacity:

> [T]he face of a complaint must indicate whether a plaintiff seeks to recover damages from defendants directly, or to hold the state responsible for the conduct of its employees. ... It is not too much to ask that if a person or entity is to be subject to suit, the person or entity should be properly named and clearly notified of the potential for payment of damages individually.
>
> . . .
>
> Accordingly, because the Eleventh Amendment places a jurisdictional limit on federal courts in civil rights cases against states and state employees,

we understand Rule 9(a) [of the Federal Rules of Civil Procedure] to *require* plaintiffs to properly allege capacity in their complaint.

*Id*. at 593 (citations omitted).  *See also Lovelace v. O'Hara*, 985 F.2d 847, 850 (6th Cir. 1993).

Mize has not stated explicitly the capacity in which each defendant is being sued. Accordingly, assuming that he has sued the defendants in their official capacity only, this action is barred by the Eleventh Amendment.

IV.     Conclusion

The defendants are entitled to judgment as a matter of law and their motion for summary judgment will be **GRANTED**.  This action will be **DISMISSED WITH PREJUDICE**.  The court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous.  *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Leon Jordan  
United States District Judge